**SHAWANGUNK CO-OP. DAIRIES, Inc., v. JONES, War Food Adm'r, et al.**

District Court, S. D. New York.

March 27, 1945.

Edward L. Cole, of New York City, for plaintiff.

John F. X. McGohey, U. S. Atty., of New York City (Samuel Rudykoff, Asst. U. S. Atty., of New York City, of counsel), for defendant.

GODDARD, District Judge.

█ This is an action in equity to review a ruling of the War Food Administrator. Such review is authorized by Section 8c(15) (B) of the Agricultural Marketing Agreement Act of 1937, 7 U.S.C.A. § 601 et seq. The ruling denied the plaintiff's petition for a refund of $1940.33 paid under protest by plaintiff alleged to have been wrongfully assessed by the Market Administrator acting under Order No. 27 and treating certain milk received at plaintiff's plant as milk received by it from producers. The scope of review by this court is confined to determining whether the ruling is in accordance with law. Section 8c(15) of the Act.

There is no objection to the Administrator's findings of fact which are included in his decision, In Re Shawangunk Cooperative Dairies, Inc., 3 A.D. 852, and there is ample evidence in the record to support his findings. But plaintiff does contend that, conceding these facts, Order No. 27 was not applicable to plaintiff, and hence the assessment was improper.

█ The Act, the Regulations, and the Order seek to bring about a fair division among producers of the fluid milk market and utilization of the rest of the supply in other dairy staples, and thus to correct evils arising from over production of the fluid milk, price cutting, etc. Cf. United States v. Rock Royal Co-Op., 307 U.S. 533, 59 S.Ct. 993, 83 L.Ed. 1446.

█ Order No. 27 was originally issued by the Secretary of Agriculture pursuant to Section 8c(1) of the Agricultural Adjustment Act. Thereafter, pursuant to the First War Powers Act of 1941 and the Second War Powers Act of 1942, 50 U.S.C.A. Appendix §§ 601 et seq., and 631 et seq., this authority was transferred to the War Food Administrator. The power to isssue the order is not questioned, but its interpretation is. Order No. 27 applied to "Regulating the handling of milk in the New York Metropolitan Area" and imposed certain

duties upon "handlers of milk or milk products for the benefit of "producers" [farmers]. It was designed to support the price of milk and to establish price uniformity among "producers." The "handler" must report to a "Market Administrator" the milk received by it classified "in accordance with the form in which it is held or moved from * * * the plant where received from producers * * *," and to pay "producers" sums computed by the "Market Administrator." In addition "handlers" must make contributions to the "Producers Settlement Fund" out of which the "Market Administrator" distributes to producers payments to make the price of milk uniform within that area. The result of the use of the device of an equalization pool is that each producer, dealing with a proprietary handler, gets a uniform or weighted average price for his milk, with differentials for quality, location, or other usual market variations, irrespective of the manner of its use. Cf. United States v. Rock Royal Co-Op., 307 U.S. 533, at page 571, 59 S.Ct. 993, 83 L.Ed. 1446.

The facts as found by the War Food Administrator are that the plaintiff is a cooperative association of producers of milk; operates a milk plant, approved by the health authorities of New York City at Kyserike, New York; that it was a handler from May 1, 1941, through December 31, 1941, and was subject as such to Order No. 27; that up to about May 1, 1941, it had about 110 members from whom it had regularly been receiving milk; that the milk received from them was taken into the plaintiff's plant, weighed, records kept of the weight, butterfat samples were taken and butterfat records kept, all performed by the plaintiff through its employees. In addition the dairy farms of these 110 producers were inspected, bacterial tests were made, payroll records were kept for each producer and payments were made to each producer for his milk by plaintiff. That prior to May 8, 1941, Meadow Valley Farms, Inc. [later referred to as Meadow Valley], was a corporate handler operating a plant at New Paltz, New York, where it received milk from some 50 producers; that about May 8, 1941, it ceased to operate its plant at New Paltz which is about 14 miles distant from plaintiff's plant and could not receive milk from its producers for shipment into the New York Metropolitan Milk Marketing Area; that in order that the 50

producers of Meadow Valley might have a market for their milk, it arranged for its producers to deliver their milk to a platform in New Paltz and by arrangement with plaintiff caused such milk to be delivered to the plaintiff at its plant at Kyserike. This plan was to be a temporary one until Meadow Valley could get another plant in operation, but was approved by the Market Administrator; also by the health authorities of New York City. This plan was in operation from May to August inclusive, and in its reports to the Market Administrator for these months Meadow Valley reported for such milk and plaintiff did not include such milk in its report. These reports were filed, audited and approved by the Market Administrator. In August it became apparent that Meadow Valley was not going to establish a plant at New Paltz, so that it could be qualified to receive milk from producers and ship it into the marketing area. The Market Administrator informed plaintiff and Meadow Valley that from September 1, 1941, plaintiff would be considered, under Order No. 27, as the handler of the milk of the producers that was being delivered by the producers to the platform at New Paltz and which was thereafter being delivered to plaintiff, but the plaintiff did not include in its reports this milk received in the months from September to December from the Meadow Valley producers, and the Market Administrator refused to accept its reports until they were revised so as to include the milk. Whereupon the plaintiff, under protest, filed amended reports and included this Meadow Valley milk after obtaining essential information from the office of the Market Administrator. As a result of the inclusion of such milk in its reports, the plaintiff became liable to the Market Administrator for the producer-settlement fund in the sum of $1,783.39 and for the administrative assessment fund in the sum of $156.94, a total of $1,940.33, which plaintiff paid under protest July 30, 1942.

The following finding of the Administrator [No. 12] seems to be particularly significant, and I quote: "The only connection that the petitioner [plaintiff] had in relation to the milk in controversy was receiving the milk and handling it through its receiving room. The producers who produced the milk were not members of the cooperative. It did not pay the cost of transportation. It did not pay the producers for the milk. It did not weigh it, test it for but-

terfat or bacterial count, and no record was kept by petitioner of these facts. After the milk was received by petitioner, it passed through its receiving room and was delivered to a company known as Dairy Industrial Management who pasteurized it or bottled it in accordance with a contract between that company and the petitioner. Thereafter the milk was sold to Vogt's Dairies, a handler and distributor operating in the New York Metropolitan Area."

The Administrator also found that Meadow Valley did not succeed in obtaining a plant as was originally intended and that the producers who had formerly delivered milk to it transferred to the plaintiff and became members of the plaintiff's association effective January 1, 1942.

There is no finding nor is there evidence that any of these corporate entities intermingled their transactions as a means of circumventing the Order. It does not appear that plaintiff was a mere corporate instrument of a parent corporation.

The defendants' answer admits that the milk in question was not purchased by the plaintiff and was never owned or sold by it. Although the Administrator makes no express finding the uncontradicted testimony is that the plaintiff did not pay for the milk nor receive any compensation for it and that plaintiff was not paid anything for its services by Meadow Valley.

The Administrator has treated this milk, which passed through plaintiff's plant, as if it were milk received and acquired by plaintiff from the producers and hence that Order No. 27 applies.

Section 927.1(e) of Order No. 27 defines "producer" as "any person who produces milk which is delivered to a handler at a plant which is approved by any health authority for the receiving of milk to be sold in the marketing area." Section 926.1(f) says—"handler" means "any person who engages in the handling of milk or cream or milk products therefrom, which was received at a plant approved by any health authority for the receiving of milk to be sold in the marketing area, which handling is in the current of interstate commerce or directly burdens, obstructs, or affects interstate commerce. This definition shall be deemed to include a cooperative association of producers with respect to any milk which it causes to be delivered from producers to any other handler for the account of such association and for which such association receives payment."

The meaning of the words "received from producers" in Sections 927.3, 927.4, 927.5, 927.6, 927.8 [herein below set forth in part[1]] of Order No. 27 is the essential question for determination.

The plaintiff contends: One, that Section 8c(5) (A.B.C.D.E.) [the pertinent parts which are set forth in the footnote[2]] limits the issuance of Orders covering handlers to milk which is purchased by handlers or acquired for marketing by them; two, that it did not receive the milk from the producers, but from Meadow Valley which is not a producer.

▇▇▇ In United States v. Rock Royal Co-operative, Inc., et al., 307 U.S. 533, 59 S.Ct. 993, 1016, 83 L.Ed. 1446, it was held that the word "purchased" as used in these sections means "acquired for marketing." It appears therefore that the Act authorized the Administrator to issue orders covering handlers who purchased or acquired milk for marketing, but he may not issue any order "inconsistent with, the terms and conditions specified in subsections (5) * * *." Section 8c, (7) (D) of the Act of 1937.

▇▇▇ An Act of this character should be liberally construed in line with the desirable purposes which it was intended to accomplish and the Administrator's interpretation should be given considerable weight, but that does not mean that this court may disregard the words of the Act and the higher court's interpretation. In face of the facts it would be quite an unreasonable interpretation of the phrase "acquired for marketing" to say that the plaintiff acquired the milk in question for marketing.

The plaintiff did not purchase the milk nor acquire it for marketing in any sense of the word, for the milk was purchased from the producers by Meadow Valley, bottled by Dairy Industrial Management, and sold by Meadow Valley to Vogt's Dairies, who subsequently sold it in the marketing area. The plaintiff was for the time being a gratuitous bailee of the milk which it received from the owner and

---

[1] 927.3 "Classification of milk.

"(a) Basis of classification. All milk received during any month from producers by handlers shall be classified, etc."

927.4 "Minimum prices. (a) Class prices. (1) For milk * * * received * * * from producers * * *. For milk * * * received from producers * * *. (2) Payment of the minimum prices for milk received direct from producers * * *. Any handler who purchases or receives * * * milk from a cooperative association * * *."

927.5 "* * * each handler shall report * * * with respect to milk received at each plant * * * (1) The total quantity * * * received from producers * * *, and from other handlers * * *."

927.6 "* * * The net pool obligation of each handler for milk received from producers * * * shall be a sum of money computed for such month as follows:

"(I) Determine the total quantity of milk in each class at each plant * * *.

"(4) Subtract from the remaining quantity of milk in each class the quantity * * * received from any other plant, or received from any other handler * * *."

927.8. "As his pro rate share of the expense of administration hereof, each handler shall * * * pay * * * a sum not exceeding 2 cents per hundred weight on the total quantity of milk which was received from producers at plants, operated by such handlers * * *."

[2] "(A) Classifying milk * * * and fixing * * * prices * * * which all handlers shall pay, and the time when payments shall be made, for milk purchased from producers or associations of producers. Such prices shall be * * * subject only to adjustments for * * * (2) the grade or quality of the milk purchased, and (3) the locations at which delivery of such milk * * * is made to such handlers.

"(B) Providing:

"(i) for the payment to all producers * * * delivering milk to the same handler of uniform prices * * * subject * * * a further adjustment, equitably to apportion the total value of the milk purchased by any handler, or by all handlers, among producers * * *.

"(C) * * * providing a method for making adjustments in payments, as among handlers * * * to the end that the total sums paid by each handler shall equal the value of the milk purchased by him at the prices fixed * * *.

"(D) Providing that, in the case of all milk purchased by handlers from any producer who did not regularly sell milk during * * *.

"(E) Providing * * * for the verification of weights, sampling and testing of milk purchased from producers and * * * for assurance of * * * the payment by handlers for milk purchased."

bailor, Meadow Valley. The orders permissible under the Act were not intended to apply to a mere bailee. See New England Dairies v. Wickard, 2 Cir., 144 F.2d 460. Under Order No. 27 in addition to the payment into the equalization pool, the handler was required to pay a pro rata share of the Administrator's expenses. This tends to confirm the view that Order No. 27 was intended to apply only to a proprietory handler which had acquired the milk from a producer for marketing and that it was not intended to impose liability for such expense upon a mere gratuitous temporary bailee simply because the milk passed through its receiving room but which had neither received the milk from the producer nor had any financial interest in it.

The rulings of the Market Administrator and of the War Food Administrator appear not to be in accordance with the law, and are therefor set aside, and the matter remanded to the Administrator for proceedings in accord with this opinion.

Settle decree on notice.